IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ALEX ADAMS, #01181239 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv111 |
| BOBBY LUMKPIN, et al. | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Alex Adams, a prisoner confined at the Coffield Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Adams is suing (1) Bobby Lumpkin, TDCJ Director, (2) Officer Davis, (3) the Office of Inspector General (OIG), and (4) Warden Pope. For reasons explained below, the Court recommends that the lawsuit be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted.

**I. Adams's Amended Complaint—Operative Pleading**

Adams's amended complaint, (Dkt. #9), is the operative pleading in this case. An amended complaint entirely supersedes and takes the place of the original complaint. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736 (5th Cir. 1986). Adams maintains that his safety is at risk while incarcerated at the Coffield Unit. He argues that "safety is a problem," because the doors and tray slots are not secure. Adams explains that on two occasions, prisoners have "popped" out of doors and assaulted him, which are safety issues and "neglect of duty." He contends that he was placed

1

in a cell "right next door to" an offender who "pop[ed] out" and sexually assaulted him—"just like [he] was put in a cell right down run from" another offender who stabbed him in May 12, 2021.

With respect to each individual defendant, without providing facts or specifics, Adams attributes that Defendant Lumpkin to the lack of secure doors/tray slots. Defendant Davis, he alleges, "took his statement," but claims that he was not sexually assaulted. The OIG's grievance investigator "denied" his request for a prison transfer, counselling, and to press charges. The OIG interviewed him, but "nothing was done"—and Defendant Pope "signed off on [a] grievance," but did nothing. He seeks compensation for pain and suffering, the appointment of counsel, and to press charges.

Adams filed an exhibit, (Dkt. #11), in support of his lawsuit. He claims that he was forced to defend himself by tying the slot closed, which is why an officer "refused" to write him up. Adams further states that he was punished by being placed on "food loaf," but nothing happened to the other prisoner who assaulted him. Adams explains that he chose to place "plastic" on his "cell front" for protection.

The attached exhibit appears to be a documented disciplinary infraction, dated April 21, 2022. The offense description notes that Adams "did tamper with a food tray slot by tieing [sic] it shut with a piece of sheet to try and make it look like it was closed," (Dkt. #11, pg. 3). Prison Officials then conducted a "security detention level review/placement on restriction," placing Adams on food loaf.

**II. Legal Standards**

Under 28 U.S.C. § 1915A, a court shall review any complaint in a civil action wherein a prisoner seeks redress from a governmental entity or officer, or employee of a governmental entity. During its review, the court must identify cognizable claims or dismiss the complaint or any

portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr Cnty., Tex.*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v, FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather,

the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414, (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

**III. Discussion and Analysis**

The Court understands that Adams claims that Defendants acted with deliberate indifference to his safety because the doors/tray slots within the prison are not secure. He explains that he was assaulted because fellow prisoners are able to "pop out of doors."

The Eighth Amendment's prohibition against the imposition of cruel and unusual punishment requires prison officials to protect prisoners from violent attacks by other prisoners; however, not every injury suffered by a prisoner rises to the level of a constitutional violation. *See Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The deliberate indifference standard is very difficult to meet. *See Domino*, 239 at 756. The Supreme Court elaborated by holding that:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that as substantial risk of serious harm exists, and he must also draw the inference. …

> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38. The Court further explained that prison officials who have actual knowledge of a risk of harm may not be held liable if "they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844-45 ("[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."). Crucially, in order to show that prison officials were deliberately indifferent to a prisoner's need for protection, the prisoner must prove "that the official *actually knew* of a substantial risk of serious harm and *failed to act*." *Adeleke v. Heaton*, 352 F. App'x 904, 907 (5th Cir. 2009) (per curiam) (unpublished) (emphasis added).

A prison official does not act with deliberate indifference to a prisoner's safety "unless the official knows of *and* disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837 (emphasis added). The Supreme Court held that a prison officials are not liable for the failure to protect a prisoner if (1) "they were unaware of an even an obvious risk to inmate health and safety"; (2) "they did not know of the underlying facts indicating a sufficiently substantial danger"; (3) "they knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent" or (4) "they knew of a substantial risk to inmate health and safety . . . [and] responded reasonably to the danger, even if the harm was not ultimately averted." *Id*. at 844-45.

The Fifth Circuit, in turn, has repeatedly held that "actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Hernandez ex rel. Hernandez v. Tex. Dept. of Protective and Regulatory Servs.*, 380 F.3d 872, 883 (5th Cir. 2004) (holding that even gross

negligence does not establish deliberate indifference). In other words, relevant here, negligence on the part of prison officials does not rise to the level of a constitutional violation. *Farmer* at 835. "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a risk of substantial risk of serious harm." *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020).

Here, Adams does not provide facts allowing an inference than any individual defendant knew of and then disregarded a substantial risk to his safety. He provides nothing to support any claim that Defendants were consciously aware of any threat to his safety. For example, in describing the actions or omission of Defendant Lumpkin, Adams states only that the tray slots are not secure and that "safety is a problem," (Dkt. #9, pg. 3). Similarly, he claims that Defendant Davis and the OIG took his statement and interviewed him, but "nothing was done." These statements are naked assertions devoid of factual enhancement that do not suggest that any defendant had a "sufficiently culpable state of mind." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002).

Adams, instead, pleads nothing more than mere negligence. The failure to remain vigilant in maintaining safe prison environments may rise to the level of negligence but does not by itself amount to deliberate indifference. *See West v. Blair*, 254 F.3d 1081 (5th Cir. 2001). The failure to ensure that doors/tray slots are secure on two occasions may have been negligent, but as mentioned, Adams has no pleaded facts which would allow the inference that Defendants knew of and then disregarded a substantial risk of serious harm. *See, e.g.*, *Franco-Calzada v. United States*, 375 F. App'x 217, 220 (3rd Cir. 2010) (the failure to inspect and fix a faulty ladder attached to a prison bunk bed was negligence, not rising to the level of an Eighth Amendment violation). As the Court in *Franco-Calzada* explained, the Eighth Amendment requires "more than ordinary lack of

care for the prisoner's interests of safety." *Id*. at 220 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Moreover, Adams complains that Defendants failed to take any other action—other than his statements—in connection with the incidents. But to the extent Plaintiff suggests that Defendants should have sought punishment or prosecution of the prisoners who allegedly assaulted him, citizens do not have any constitutional right to have another individual disciplined or prosecuted. *Oliver v. Jackson Corr. Ctr.*, 2013 WL 596155, at *3 (W.D. La. Jan. 22, 2013); *Williams v. Washington*, 1997 WL 201579, at *3 (N.D. Ill. Apr. 16, 1997) ("Williams had no legal right to have the correctional officers punished, or to have an investigation conducted."). One might construe Adams's claim to suggest that Defendants had some duty under prison rules or regulations to report the incidents, but "the failure . . . to follow rules and regulations does not, alone, establish deliberate indifference." *Solis v. Barber*, 2021 WL 3434991, at *3 (N.D. Tex. June 30, 2021).

Defendant OIG is not subject to suit under section 1983. Under the Federal Rules of Civil Procedure, a party to a lawsuit must have the capacity to be sued. Fed. R. Civ. P. 17(b)A department of a local government entity—or a sub-unit of a state agency such as the Office of Inspector General—must "enjoy a separate legal existence" to be subject to a lawsuit. *See Darby v. Pasadena Police Department*, 939 F.2d 311, 313 (5th Cir. 1991). In other words, a plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and legal existence. *Id*.

Here, the TDCJ's Office of the Inspector General (OIG) has no separate legal existence apart from TDCJ. Accordingly, as Adams offers nothing to suggest otherwise, the Office cannot be sued in its own name. *See Darby*, 939 F.2d at 313; *see e.g.*, *Lane v. Athens Police Dep't*, No.

7

6:05-cv-498, 2006 WL 1049966 at *3 (E.D. Tex. Mar. 24, 2006 ("While he does sue the Henderson County Jail, the jail is not a separate legal entity and cannot be sued in its own name.").

Finally, suing a prison official because he denied a prison grievance—or, as Adams contends, "signed off on a grievance"—does not state a cognizable claim under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989). Accordingly, Adams does not state a claim under section 1983, and his lawsuit should be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted.

## RECOMMENDATION

Accordingly, it is recommended that Adams's civil rights lawsuit be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 23rd day of March, 2023.**

8

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE